

JH

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| TAMEKA PATRICE WATERS, individually, and on behalf of all other persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. ) |
| LEIDOS, INC.**(DE), | ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

### PARTIES TO THIS COMPLAINT

A. **The Plaintiff**

1. The Plaintiff, TAMEKA PATRICE WATERS, is an African-American woman, and resident of Reston, Virginia.

2. The plaintiff is a former employee of the defendant, LEIDOS, INC., as a part of an acquisition of Lockheed Martin, in Bathesta, Maryland in 2016.

3. The plaintiff was hired by LOCKHEED MARTIN on October 7, 2007.  She continued to work for LEIDOS, INC. after the acquisition on August 16, 2016.  While Employed as a Department supervisor, her work record was impeccable.

4. While working for Lockheed Martin, the plaintiff was responsible for the creation of the Veteran's Administration Medical Appointment Scheduling System, and had received several awards throughout her employment.

5. She maintained the same position with LEIDOS, INC. throughout the acquisition of Lockheed Martin by LEIDOS and was last receiving a salary $180,000 per year.

6. The defendant terminated the Ms. Miller's employment formally on August 9, 2019, and her last day of work was August 23, 2019.

7. That the plaintiffs was subject to employment discrimination beginning on or about, August 16, 2016, the date of the acquisition of Lockheed Martin by LEIDOS, INC., until her forced termination from LEIDOS, INC., on August 23, 2019.

**B. The Defendant**

The Defendant, LEIDOS, INC. is a foreign Delaware Corporation, having offices globally, and conducting business both globally and domestically, including the state of Illinois.

8. LEIDOS, INC. is a covered employer, as it is engaged in an industry affecting commerce and employing over 15 employees.

9. The defendant, LEIDO's INC., is an American Defense, Aviation, Information Technology (formerly known as Lockheed Martin IS&GS), and Biomedical Research company headquartered in Reston, Virginia, that provides scientific, engineering, systems integration, and technical services. LEIDOS, INC. merged with Lockheed Martin's IT sector in August 2016 for Information Systems & Global Solutions business to create the defense industry's largest IT services provider. The Leidos-Lockheed Martin merger is considered one of the biggest transactions in the consolidation of a defense sector.

2

10. LEIDOS, INC. works extensively with the United States Department of Defense (4th largest U.S. Department of Defense contractor FY2012), the United States Department of Homeland Security, and the United States Intelligence Community, including the NSA, as well as other U.S. government civil agencies and selected commercial markets.

11. The defendant employed the plaintiff from August 15, 2016 to August 23, 2019.

12. The defendant intentionally terminated the plaintiff's employment on August 23, 2019, with notice given on August 9, 2019.

13. The defendant failed to stop harassment of the plaintiff during the entire term of her employment with defendant, LEIDOS, INC.

14. The defendant failed to respect FMLA and accommodations, as well as company protocol, regarding employment termination procedures and/or alternative placement within the company.

**JURISDICTION**

15. This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, et seq, for discrimination based on race, color, sex and national origin.

16. Jurisdiction over the statutory violations alleged is conferred as follows: for Title VII claims by 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 2000e-5(f)(3); and 24 U.S.C. § 1981.

17. The plaintiff has filed a charge with the EEOC on April 4, 20202, (EEOC Charge No. 570-2020-01573), and was issued a right to sue letter on September 19, 2020, in which she received on September 27, 2020. A copy of the charge is attached hereto as "Exhibit A."

18. Venue is proper in that Defendant maintains a business presence in Chicago IL, an allegations of this class action that LEIDOS, with over 40,000 employees, has discriminated against African Americans and locations throughout the United States, all of whom the plaintiff brings on behalf on earth as in individual and putative class representative

## EXAUSTION OF ADMIISTRATIVE REMEDIES

19. On September 27, 2020 the plaintiff received a dismissal and Right to Sue notice from the EEOC given 90 days to file a lawsuit with this Court.

## STATEMENT OF FACTS

**20. SEE ATTACHED AFFIDAVIT OF TAMEKA PRICE WATERS, as "Exhibit B."**

## ADDITIONAL FACTUAL INTFORMATION

21. Ms. Waters is currently interviewing for various job positions in the Chicago Illinois, metropolitan area.  She was born and raised in Chicago and attended school through her completion of college in the Chicago/Cook County area. Her family and many friends reside in Chicago, she intends on residing in Chicago in the very near future once gaining employment.

22. This action is brought on her individual behalf, and on behalf of those similarly situated who have suffered racial discrimination by this particular government contractor (LEIDOS, INC.). The Plaintiff lost her dignity as an educated and accomplished woman, loss of self-esteem, pride, her family's pride, loss of her house located in an upper middle-class neighborhood of Virginia.  Additionally, she was forced to file bankruptcy as a result of her termination, she has suffered the inability to sleep, and physical and

mental anguish. She continuously needs and receives medical and psychiatric support, as well constantly suffers from exhaustion and depression, shame, and pain and suffering. All of this being a result of her discrimination by the defendant for being an African American woman.

23. The plaintiff, who holds a master's degree in business administration, prided herself on the hard-earned respect, all of which has been stolen from her. This is something that cannot be purchased, learned, gifted, nor replaceable. Since her termination, she has suffered such depression that leads to her often considering her lack of worthiness to continue, and what is now her struggle to keep on living.

24. On information and belief, the plaintiff is aware of numerous employees of LEIDOS, INC. who are African American, both men and women, bit more women, who, like the plaintiff, have have been terminated (or forced to resign) due to the widespread racial and sexual discrimination, in locations owned or controlled by Leidos. These employees, who were similarly situated to the plaintiff, were former employees of Lockheed Martin, and all with long term solid employee profiles who were terminated or forced to retire from LEIDO employment—particularly since the election of President Trump in 2016.

25. On information and belief, LEIDOS, IINC., together with numerous of its executives, officers, supervisors, directors, at one time or another during the year 2015 up to and including the present time, have personally donated large amounts of cash checks, money orders and other items of value directly to Trump administration, and or publicly known organization supporting the Trump administration for President for both elections in 2016 and 2020.

**CAUSES OF ACTION**

**COUNT 1-VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**

26. Plaintiff and putative class plaintiffs realleges paragraphs 1-25 as fully pleaded herein.

27. Plaintiff is in a protected class as she is an African American woman.

28. The plaintiff was denied equal opportunity because of her race and sex.

29. Defendant is a covered employer under 42 U.S.C. § 2000e(b) as it is a limited liability company is a "person" under the Act, as LEIDOS, INC., is an employer of at least 15 employees for each working day for 20 or more calendar weeks in the current or preceding calendar year.

30. That the plaintiff was terminated from her employment as a result of the discrimination.

31. The plaintiff suffered unequal terms and conditions of her employment.

32. The plaintiff suffered wrongful termination, retaliation, along with racial harassment and loss of employment.

33. As a direct and proximate result of the wrongful conduct of the defendant, the plaintiff has suffered loss of income, emotional distress and mental anguish, attorney's fees, and injury to his professional reputation.

**CLASS ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23**

**Plaintiffs' Case:**

34. This action is predicated upon Rule 23 of the Federal Rules of Civil Procedure as follows:

    a. The members of the classes are so numerous that joinder of all members is impractical.

b. While the exact number of class members is presently unknown.  The exact number of class members can only be ascertained through appropriate discovery.

c. Plaintiffs' claims arise from the same policies and courses of conduct on the part of defendants' and plaintiffs' claims are based on the same legal and remedial theories as each of those of the proposed class they represent and involve identical factual circumstances.

d. Further, the injuries suffered by Plaintiffs are similar to the injuries suffered by putative class members, and Plaintiffs seek common forms of relief for themselves and members of the classes they represent, including injunctive and declaratory relief, lost wages, and economic damages.

e. There are questions numerous of law and fact and are common to all of the alleged putative class plaintiffs and putative subclass plaintiffs, and as to the alleged putative defendant classes.

f. The claims of the representative parties are typical of the claims and defenses of the putative classes and subclass members.  The same is true as to the named putative defendant classes.

g. The representative parties will adequately protect the interest of the classes as they are.

h. That the relief sought is exemplified, for example, all named plaintiffs and putative class plaintiffs, is injunctive, temporary, and permanent, treble damages, punitive damages, compensatory damages, and injunctive relief. All of

   the relief both equitable and common applies to all named and putative classes of plaintiffs.

35. The questions of law and fact that are common to class members predominate over any questions affecting only individual members, and a class action is far superior to other available methods for fairly and efficiently adjudicating the controversy for both the Court and the Parties, both named and putative class plaintiffs.

36. The putative named plaintiff classes, together with that of the putative defendant classes if certified as such, will greatly assist this Honorable Court and the parties in the manageability of the case.

PRAYER FOR RELEIF

WHEREFORE, the plaintiff respectfully request judgment against the defendant for compensatory damages, future and past pain and suffering, loss of enjoyment of life, loss of income, loss of future job opportunities, injunctive relief the differences in amount of the breach of contract, punitive damages, attorneys fees and costs and any other remedy this Court feels is fair and just. In addition, the plaintiff and putative class plaintiffs respectfully requests that this Honorable Court certify this case as a class action.

 PLAINTIFF DEMANDS A TRIAL BY JURY

                        Respectfully Submitted


                        /s/ Robert A. Holstein
                        _____

Robert A. Holstein                  Attorney for Plaintiff
Holstein & Muth, LLC
130 N. Garland Court, Suite 1906
Chicago. Illinois 60602

Holsteintobert3@gmail.com
(312) 906-8000
ARDC No: 1600125

Waters EEOC Complaint Against Leidos

I, Tameka Patrice Waters, was discriminated against by my former employer, Leidos on the basis of race when they demoted me while on Family Medical Leave Act (FMLA), denied me a Division Manager position in December 2018, and a CareC2 Senior Director Client Impact position in June 2019. Prior to this, I had an impeccable record and was directly responsible for the Veterans Administration (VA) Medical Appointment Scheduling System (MASS) program, which was part of a $625 million Indefinite Delivery, Indefinite Quantity (IDIQ) contract - a marquee program in the Military and Veterans Health (MVH) division.

In support of these allegations, I provide the following:

1. I was hired on October 7, 2007 by Lockheed Martin as a Business Planner. This tenure was transferred to Leidos when they acquired Lockheed Martin's Information Systems and Global Solutions (IS&GS) division August 15, 2016.
2. Prior to the transition to Leidos, I enjoyed a personally and professionally rewarding career which included rapidly rising through the ranks to Senior Engineering Manager with responsibility for more than 150 people and a $40 million dollar portfolio in less than six years. At Leidos, I ascended to the rank of Vice President of the Veterans Health Administration Portfolio as a result of my leadership, work ethic, and my team player attitude. I received multiple accolades and recognition and consistently remained on the top talent list for high performing employees (**Exhibit 1**)
3. I took medical leave to have two surgeries to address lingering health issues in October and December 2018. While on FMLA (**Exhibit 2**), I was targeted and stripped of my duties and responsibilities. My Deputy, Dana Bennett (White Female) permanently replaced me and assumed my position while I was on FMLA and upon my return she was responsible for delegating assignments to me. (**Exhibit 3**).
4. I was interviewed for the Military and Veterans Health Division Manager position on Monday, December 3, 2018 by Sheila McLean in Human Resources. Jerry Hogge, Military and Veterans Health Vice President was the hiring manager and was scheduled to participate in the interview but did not. I was only interviewed by Sheila and was never afforded the same interview as the other candidates to appear before the hiring manager – a disadvantage and a clear violation of hiring policy. My peer Rob Bird, (White male) was selected as the Division Manager. It is important to note that the position description stated the candidate must be in the Washington DC metro area. (**Exhibit 4**) Rob Bird lives in St. Petersburg, Florida – Another blatant violation of hiring policy.
5. I began medical leave on December 4, 2018. On December 11, 2018, I was contacted by Rob Bird, the new Division Manager and asked to contact Human Resources. I spoke with Sheila McLean on December 12, 2018 and she informed me that I would be laid off upon my return from medical leave in January 2019 (**Exhibit 5**). This cruel and inconsiderate message was delivered while I was recovering from a major surgery. This news significantly impacted my recovery, causing depression, anxiety, and fear (**Exhibit 6**).
6. Upon my return in February 2019, my layoff was rescinded without much explanation or rationale (**Exhibit 7**). This was a relief until I was informed by Mr. Jerry Hogge that I no longer had an official position. I was subsequently reduced to performing ad hoc administrative tasks not commensurate with my education, skills, and experience. This uncertainty caused even more anxiety, depression, and despair.
7. During my seven-minute performance review with Jerry Hogge in February 2019, I was reprimanded for having a financial plan and business development goals that were deemed to be too aggressive. Ironically, the plan was devised and implemented without my input. As a result, I

Received by EEOC Washington Field Office Date:04/02/2020

received a "Meets Expectations Rating." This rating was unfair. (**Exhibit 8**) My peers (mostly white males) who also didn't make the financial plan were given higher performance ratings.

8. I was asked to lead a presentation for the Department of Defense in San Antonio, Texas regarding a military health proposal (**Exhibit 9**). My presentation went exceptionally well and was the more effective of the two Leidos health presentations given. Accordingly, I was lauded by my peers and superiors alike. Ms. Teresa Albo sent an email to senior leadership, including Jerry Hogge, commenting on how well I performed. Despite the accolades and my performance, I was removed from the proposal team.

9. In March 2019, I was assigned to the Trinity Health team led by Ms. Missy Mitchell (**Exhibit 10**). It was clear from the initial meeting that there was not an assignment for me, so I attempted to add value where I noticed there were shortfalls. However, because I had no title and no support from senior leadership, the other team members were not responsive to my requests for information/data. I voiced my concerns to Ms. Mitchell to no avail, and essentially became ostracized from the team.

10. In early May, I received an email from Ms. Mitchell stating I was not engaged with the team and was being removed from the Trinity Health assignment immediately (**Exhibit 11**). This was extremely disturbing because I had previously expressed concerns to her weeks earlier.

11. I spoke with Ms. Sheila McLean in Human Resources regarding my concerns and pointed out that the removal did not follow the performance improvement plan (PIP) process. I also expressed that they could not state that I was not meeting performance expectations when I had no position or performance requirements. Nothing was done. The hostile work environment began to impact my mental health and resulted in me seeing a therapist. Their actions caused me to feel defeated. They were methodically ruining my reputation and deliberately removing me from assignments to force my resignation.

12. On/around May 16, 2019, I met Debbie Opiekun, my new leader, and was advised that I would receive an official layoff notice by May 25, 2019. She informed me it was a "soft notice."

13. On/around May 23, 2019, I participated in a conference call with Jon Scholl, Health Group President, Sheila McLean, Human Resources Lead, and Debbie Opiekun, Military and Veterans Health Vice President to discuss my future in the organization. During the call, Jon Scholl informed me that I was valuable, and the organization was going to work hard to find me a role. He also stated I wouldn't be laid off and the only way I would leave the organization was if I resigned.

14. Shortly after my meeting with Jon, Debbie, and Sheila, I was rejected for the CareC2 Director position without explanation. Given I exceeded the qualifications, I reached out to Dorion Baker, one of the recruiters, to ask for feedback on why I wasn't granted an interview. After my inquiry about the interview, I was advised by Todd Christiansen, the hiring manager, that he would interview me for the position.

15. On/around May 29, 2019, I was interviewed by Todd Christiansen. During the interview, Todd was smug and seemed somewhat annoyed that he had to interview me. Immediately it was clear this interview was a formality, and there was no intent to give me legitimate consideration. When I asked Todd why I wasn't selected despite exceeding the qualifications listed on the job description, he responded that the qualifications didn't matter to him and he wasn't using the qualifications to recruit for the position. (**Exhibit 12**) It was clear I was being discriminated against, and again, they were operating outside of hiring policy to eliminate me from consideration.

16. In June 2019, I received an email from Debbie Opiekun asking me to report to the office for a meeting with Michael Lumpkin to discuss assignments with his team. I arrived about 15 minutes late due to traffic and apologized to Michael for the delay. He said, "No problem," and proceeded to have a productive discussion about my background, how I could assist his team, and the short-term assignment he had for me.

Received by EEOC
Washington Field Office
Date:04/02/2020

17. A few days later, I received a scathing email from Debbie Opiekun reprimanding me for being late to the meeting, accusing me of not taking the assignment seriously, and stating Michael was very upset about my tardiness (**Exhibit 13**). I immediately reached out to Michael, via email, and apologized again for being late and reassured him I was dedicated and wanted the assignment. Michael reiterated the 15-minute tardiness was not a big deal. He stated Debbie inquired to him about the meeting and that she wanted to know what time I arrived. His response confirmed that I was being targeted. She was looking for any excuse she could to reprimand me.

18. As a result of the above experiences, it is clear I was being targeted by my supervisor. I requested a mutual separation on July 3, 2019. 26 days later, on July 29, 2019, I was finally informed my request was going to be honored. I received my official layoff notice on August 9, 2019 and my last day of work was August 23, 2019 (**Exhibit 14**). During a meeting on August 21, 2019 to discuss an upcoming proposal which I was leading, Jon Scholl and Debbie Opiekun berated me in front of more than 20 colleagues (**Exhibit 15**). It was hostile and humiliating! This was confirmation my leaders were discriminating against me and were purposely trying to create a hostile environment which would result in me submitting my resignation.

In summary, my experience with Leidos was not an isolated event. Leidos has systematically removed five of the six black male senior leaders and the only black female senior leader – Me. The discrimination and treatment I endured while at Leidos has forever changed my life. Despite leaving Leidos six months ago, I am still being treated for anxiety, depression, and a lack of confidence brought on by the events I experienced there. The discrimination I experienced was unbearable and ultimately made it medically and mentally necessary to seek employment elsewhere and abandon the career I wholeheartedly enjoyed and worked so hard to achieve.

Therefore, it is my hope the Equal Employment Opportunity Commission (EEOC) will investigate my claims and take appropriate action to bring racial discrimination to a halt at Leidos.

Respectfully submitted.

*Patrice Waters*

Received by EEOC
Washington Field Office
Date: 04/02/2020